# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

NATIONAL TREASURY EMPLOYEES UNION,

Plaintiff-Appellee,

v.

DONALD J. TRUMP, et al.,

Defendants-Appellants.

On Appeal from the United States District Court for the District of Columbia

## REPLY IN SUPPORT OF EMERGENCY MOTION FOR AN IMMEDIATE ADMINISTRATIVE STAY AND STAY PENDING APPEAL

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

JOSHUA M. SALZMAN
JOSHUA M. KOPPEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7212*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4820*

# TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................ 2

I. THE GOVERNMENT IS LIKELY TO PREVAIL ON THE MERITS ............... 2

    A.    The FSLMRS Precludes District-Court Jurisdiction Over Plaintiff's Claims ........................................................... 2

    B.    Executive Order 14,251 Is Consistent With The Statute ...... 5

II. THE EQUITABLE FACTORS FAVOR A STAY .......................................... 12

CONCLUSION ....................................................................................... 15

CERTIFICATE OF COMPLIANCE

# GLOSSARY

| | |
|---|---|
| AFGE | American Federation of Government Employees |
| FLRA | Federal Labor Relations Authority |
| FSLMRS | Federal Service Labor-Management Relations Statute |
| NTEU | National Treasury Employees Union |

# INTRODUCTION

Plaintiff National Treasury Employees Union (NTEU) does not dispute that President Trump duly promulgated Executive Order 14,251, invoking a grant of discretionary authority under the Federal Service Labor-Management Relations Statute (FSLMRS), *see* 5 U.S.C. § 7103(b)(1).  NTEU insists that the district court nonetheless correctly enjoined that executive order as *ultra vires* on the theory that the President had ulterior motives when he determined that extending collective-bargaining rights to certain agencies' employees is incompatible with national security.  But this Court's precedents make clear that the district court lacked authority to second-guess the President's judgment in this manner.  This fundamental error is compounded by the court's failures to appreciate that NTEU was required to press its claim before the Federal Labor Relations Authority (FLRA), that the executive order would survive judicial scrutiny (even were such scrutiny permissible), and that the balance of equities decisively favors the government.  The district court's order should be stayed pending appeal.

# ARGUMENT

## I. THE GOVERNMENT IS LIKELY TO PREVAIL ON THE MERITS

### A. The FSLMRS Precludes District-Court Jurisdiction Over Plaintiff's Claims

The district court should not have even reviewed the case on the merits. NTEU has mechanisms to ask the FLRA to consider the executive order's validity and, thus, must proceed through the FSLMRS's review scheme, which is "exclusive with respect to claims within its scope." *AFGE v. Trump*, 929 F.3d 748, 755 (D.C. Cir. 2019); *see* Mot. 10.

NTEU's contrary argument (Opp'n 26) relies on inapposite cases. In *U.S. Attorney's Office*, the FLRA dismissed a union's claim against a U.S. Attorney's Office after President Bush issued an executive order excluding such offices from the provisions of the FSLMRS. 57 F.L.R.A. 750 (2002). But no party contested the validity of that executive order, so there was no jurisdictional dispute for the FLRA to resolve. *Id.* at 750 & n.3. NTEU also cites an administrative law judge's decision in *U.S. Department of the Air Force*, but the FLRA, on review of that decision, dismissed the charging party's claim on the merits, not for lack of jurisdiction. 66 F.L.R.A. 589, 592 (2012). And there too, no party

contested the validity of the applicable executive order.  NTEU fails to show that the FLRA could not consider the validity of an exclusion determination if the issue were contested, including in an already-pending case.

If the FLRA were to dismiss a claim against an excluded agency for lack of jurisdiction, that order would be a "final order of the [FLRA]" subject to judicial review in a court of appeals.  5 U.S.C. § 7123(a).  *Turgeon v. FLRA*, 677 F.2d 937 (D.C. Cir. 1982) (per curiam), is not to the contrary.  There, the Court found it lacked jurisdiction to review a decision by the FLRA's General Counsel not to issue an unfair-labor-practice complaint because in such a case "there is no 'final order of the [FLRA]'" for the Court to review.  *Id.* at 939.  The FLRA's dismissal of a complaint for lack of jurisdiction, by contrast, would be a reviewable final order.  Yet, NTEU has not even attempted to raise its claim with the FLRA, even though its merits position inherently relies on the contention that the relevant agencies remain subject to the FSLMRS, which mandates FLRA review.

The government's position here is consistent with that in *U.S. Department of the Treasury v. NTEU Chapter 73*, No. 2:25-cv-00049

3

(E.D. Ky. filed Mar. 28, 2025), where the Treasury Department seeks a declaration that it may terminate its collective bargaining agreements pursuant to Executive Order 14,251. As explained there, the Department of the Treasury, unlike NTEU, "does not have a natural [unfair-labor-practice] claim" that it can file with the FLRA raising the validity of the executive order. Plaintiff's Motion for Summary Judgment at 20, *U.S. Dep't of Treasury*, No. 2:25-cv-00049 (Apr. 18, 2025). While NTEU can file an FLRA charge alleging the agency has committed an unfair labor practice by refusing to negotiate working conditions, *see* 5 U.S.C. § 7116(a)(5), the Department has no corresponding claim that NTEU has committed an unfair labor practice by simply asserting a right to negotiate where it has none. *See id.* § 7116(b) (listing union actions that would constitute an unfair labor practice).

NTEU also fails to show harm independent of the merits of the dispute. Opp'n 28. The only harms it alleges "are the burdens abided by any respondent in an enforcement proceeding or any criminal defendant who must wait for vindication." *Jarkesy v. SEC*, 803 F.3d 9, 28 (D.C. Cir. 2015).

## B. Executive Order 14,251 Is Consistent With The Statute

Even if the district court has jurisdiction to reach the merits, the government is likely to prevail.

1. NTEU significantly understates the extent of its burden. This Court has repeatedly held that an *ultra vires* claim will succeed only if, *inter alia*, "the agency plainly acts 'in excess of its delegated powers and contrary to a specific prohibition in the' statute that is 'clear and mandatory.'" *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.). NTEU focuses solely on the second half of this standard, arguing (Opp'n 18-19) that a statutory prohibition can be clear and mandatory even if not explicitly stated in the statute's text. But the FSLMRS contains no express or implicit prohibition that precludes the President from excluding the defendant agencies from the provisions of the statute; rather, it delegates to the President the discretion to determine which agencies to exclude on national-security grounds.

Moreover, NTEU ignores the first half of the *ultra vires* standard, which requires a plaintiff to show that the agency "plainly" acted in excess of its delegated powers and contrary to a specific prohibition.

5

Thus, a plaintiff in an *ultra vires* action must show "that the agency action go[es] beyond mere legal or factual error and amount[s] to a 'clear departure by the agency from its statutory mandate' or [is] 'blatantly lawless' agency action." *Federal Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 764 (D.C. Cir. 2022) (alteration omitted). An *ultra vires* claim "is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nyunt*, 589 F.3d at 449.

NTEU cannot possibly satisfy that standard. The FSLMRS vests in the President discretion to determine whether applying the statute to particular agencies is "consistent with national security requirements and considerations." 5 U.S.C. § 7103(b)(1). As this Court has recognized, the President is not even required to justify or explain his decision to invoke this discretionary authority. *AFGE v. Reagan*, 870 F.2d 723 (D.C. Cir. 1989). Against that backdrop, NTEU can hardly show that it is "'plain on the record'" that the President exceeded his authority and that Executive Order 14,251 is "'blatantly lawless.'" *Federal Express*, 39 F.4th at 764-765. This is especially true because the President acted consistently with the FLRA's longstanding definition of national security. *See, e.g.*, *Department of Energy, Oak*

6

*Ridge Operations*, 4 F.L.R.A. 644, 655-656 (1980) (interpreting "national security" to include activities "related to the protection and preservation of the military, economic, and productive strength of the United States").

At bottom, the district court's decision rests on "an unwarranted assumption that the President was indifferent to the purposes and requirements of the [FSLMRS], or acted deliberately in contravention of them." *AFGE*, 870 F.2d at 728. Tellingly, NTEU barely acknowledges *AFGE*.

**2.** The district court found the presumption of regularity was overcome, but NTEU is wrong to characterize (Opp'n 16-18) the district court's analysis of the executive order and certain accompanying documents as factual findings deserving of deference. They are legal conclusions about whether the executive order is consistent with statute and, thus, reviewable de novo. *See Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998).

The White House fact sheet accompanying the executive order and the OPM guidance issued on the same day only confirm that the executive order is consistent with § 7103(b)(1). Those documents

7

explain that unions have used the FSLMRS's collective-bargaining and grievance provisions to interfere with agencies' ability to remove employees for poor performance or misconduct; change working conditions to meet national-security demands; eliminate waste, bloat, and insularity; and optimize agency efficiency through restructuring. *See* Mot. 16-19. The President reasonably determined that such impediments to the effective and efficient operation of the government are inconsistent with national-security considerations in the context of the specific agencies designated in the executive order—agencies such as the Departments of Defense, State, and Energy.[1]

NTEU, like the district court, improperly prioritizes Congress's purpose of promoting unionization and collective bargaining in the federal workforce over Congress's clear concurrent intent to prevent such activities from compromising national security. It would be "quite

---

[1] NTEU says the government is wrong to discuss the Departments of State and Defense because those agencies, though covered by Executive Order 14,251, are not defendants in this litigation. Opp'n 1 n.1. But we have never contended otherwise. Rather, as our motion explained, the logic of the district court's opinion applies equally to those agencies. Mot. 20-21. The district court also apparently drew a negative inference from the inclusion of those agencies within the executive order, which contributed to the court's calculation that the executive order "cover[s] two-thirds of the federal workforce." Op. 19.

mistaken to assume," as NTEU does, "that 'whatever' might appear to 'further the statute's primary objective must be the law.'" *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (alteration omitted). "[N]o statute … 'pursues its stated purpose at all costs,'" *id.* (alterations omitted), and the Court must give no less effect to the FSLMRS's provision for excluding agencies from the statute's scope as to the statute's other provisions, *see BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230, 239 (2021).

**3.** NTEU relies heavily on the Supreme Court's definition of "national security" in *Cole v. Young*, 351 U.S. 536 (1956). But as already explained (Mot. 24-25), the executive order is consistent with that definition because the designated agencies perform work that is "directly concerned with the protection of the Nation from internal subversion or foreign aggression," *Cole*, 351 U.S. at 544. *Cole* also construed a particular statute and did not purport to announce a generally applicable definition of "national security." And in the context of the FLSMRS, the term "national security" has long been construed to encompass matters relating to the "economic[] and productive strength" of the country. *Department of Energy*, 4 F.L.R.A. at 656; *see also U.S.*

9

*Dep't of Treasury Internal Revenue Serv.*, 62 F.L.R.A. 298, 303-305 (2007) (finding that the work of IRS security personnel "directly affects national security").

NTEU also errs in suggesting that an agency can have only a single "primary function" within the meaning of § 7103(b)(1)(A). This ignores Congress's clear recognition that an agency can have several primary functions. *See, e.g.*, 12 U.S.C. § 5511(c) (assigning an agency six "primary functions"); 15 U.S.C. § 634b (assigning an office 12 "primary functions"); 22 U.S.C. § 2551. Plaintiff's cramped interpretation of "primary" is unworkable as applied to government agencies that perform many disparate but significant tasks.

NTEU also contends (Opp'n 22-23) that because the executive order excluded the Department of the Treasury's Bureau of Engraving and Printing, the government must individually justify the inclusion of every other Treasury subdivision. It cannot be the case, however, that the government bears a heavier burden to justify a more tailored executive order than a more general one, and such a rule would create a perverse incentive for the President to designate agencies under § 7103(b)(1) at the broadest level. Furthermore, NTEU's suggestion

that the government bears the burden of explaining the designation of any agency or subdivision is flatly inconsistent with the Court's holding in *AFGE v. Reagan* that the President need not "insert written findings into an exempting order." 870 F.2d at 727. If the President need not explain his determination in the executive order itself, neither should a court require the Department of Justice to provide such explanation in subsequent litigation.

Even if the government did need to justify the designation of each individual agency and subdivision, it need not meet that burden in a 5,200-word stay motion, or even in an opposition to a preliminary-injunction motion. Our motion offered examples of the national-security functions performed by some of the defendant agencies, such as the Department of Energy, which ensures the security of the U.S. nuclear-weapons stockpile and protects against cyber and physical attacks on U.S. energy infrastructure, and the Centers for Disease Control, which combats domestic and foreign bioterrorism threats. *See* Mot. 21-22. NTEU offers no response to these examples.

## II. THE EQUITABLE FACTORS FAVOR A STAY

The equitable factors also weigh in favor of a stay. NTEU cannot plausibly deny that an injunction that interferes with the national-security work of the federal government threatens irreparable harm to the government and is contrary to the public interest. *See Trump v. International Refugee Assistance Project*, 582 U.S. 571, 581 (2017) (per curiam). Plaintiff provides no basis to second-guess the President's determination that applying the provisions of the FSLMRS to the designated agencies would be inconsistent with national-security requirements.

NTEU also fails to demonstrate that a stay would cause irreparable harm. The union complains that the government stopped deducting federal employees' union dues from their paychecks, but this does not prevent NTEU from collecting dues directly. Indeed, most membership organizations must collect dues directly from their members.

Furthermore, NTEU does not dispute that any monetary loss would be recoverable because the FLRA could order an agency to reimburse the union for dues payments that the agency wrongfully

failed to withhold from employees' paychecks, and "[r]ecoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). NTEU notes that a different union, American Federation of Government Employees (AFGE), laid off staff following the challenged executive order, and it asserts, without details, that NTEU "might be next." Opp'n 12, A93. But laying off some staff is not the same as the destruction of a business. Even the article NTEU cites concerning AFGE quotes that union as saying that the layoffs were a setback "'but not the end of AFGE—not by a longshot.'" Ryan J. Foley, *Largest Federal Employee Union, a Leading Trump Opponent, to Lay Off More than Half of Staff*, Associated Press (Apr. 24, 2025), https://apnews.com/article/afge-federal-union-trump-cuts-layoffs-downsizing-53c0a1491cc5af65278fbd16b8cfb6b5. NTEU has not shown that it lacks the existing resources to continue operations during a stay pending appeal if members elect not to send in their dues.

NTEU also does not suffer irreparable harm from agencies' decisions to stop bargaining with NTEU. The FLRA or a court could

13

order an agency to undo any non-negotiated changes to working conditions if NTEU prevails in this case. Likewise, any NTEU members who cancel their membership because of the executive order can reasonably be expected to rejoin the union if the executive order is invalidated.[2]

---

[2] NTEU contends (Opp'n 9-10) that the government failed to comply with Federal Rule of Appellate Procedure 8(a), but this Court recently held that a similar argument "lack[ed] merit," Order, *Widakuswara v. Lake*, No. 25-5144 (D.C. Cir. Apr. 29, 2025) (per curiam). Rule 8(a) does not prohibit a party from moving for a stay in the court of appeals before the district court has ruled on a similar motion. *See* Fed. R. App. P. 8(a)(2)(A)(ii) (movant must state that "the district court denied the motion *or failed to afford the relief requested*" (emphasis added)).

## CONCLUSION

The Court should grant an immediate administrative stay and a stay pending appeal.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney
  General*

JOSHUA M. SALZMAN

 */s/ Joshua M. Koppel*
JOSHUA M. KOPPEL
  *Attorneys, Appellate Staff
  Civil Division, Room 7212
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-4820
  joshua.m.koppel@usdoj.gov*

May 2025

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify this motion complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font, and that it complies with the type-volume limitation of Rule 27(d)(2)(C) because it contains 2,598 words, according to Microsoft Word.

                                                    */s/ Joshua M. Koppel*
                                                    Joshua M. Koppel