**ORAL ARGUMENT HELD ON DECEMBER 15, 2025**

No. 25-5157

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

NATIONAL TREASURY EMPLOYEES UNION,

Plaintiff-Appellee,

v.

DONALD J. TRUMP, et al.,

Defendants-Appellants.

_____

On Appeal from the United States District Court
for the District of Columbia

_____

**APPELLEE'S SUPPLEMENTAL BRIEF**

_____

PARAS N. SHAH
General Counsel

ALLISON C. GILES
Associate General Counsel

JESSICA HORNE
Assistant Counsel

NATIONAL TREASURY
EMPLOYEES UNION
800 K Street N.W.,
Suite 1000
Washington, D.C.  20001
(202) 572-5500

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Circuit Rule 26.1, the undersigned counsel hereby certifies as follows:

1.      The National Treasury Employees Union (NTEU) is an unincorporated, non-profit professional organization that represents approximately 160,000 employees of the federal government and, after Executive Order No. 14,251, serves as the exclusive bargaining representative of about one-third of those employees pursuant to 5 U.S.C. §§ 7101–7135.

2.      NTEU has no parent companies.

3.      No publicly held company has an ownership interest in NTEU.

Respectfully submitted,

/s/ Allison C. Giles__
ALLISON C. GILES
Counsel for Plaintiff-Appellee
National Treasury Employees Union

January 5, 2026

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF CONTENTS ...............................................................ii

TABLE OF AUTHORITIES ......................................................... iii

GLOSSARY ..............................................................................v

SUMMARY OF ARGUMENT ....................................................1

ARGUMENT ............................................................................1

I.    NTEU Cannot Present Its Ultra Vires Claim to the FLRA by Filing a Petition Under § 7111(b)(2), Nor Would the FLRA Have Authority to Resolve That Claim. ....................................1

    A.    A "Matter Relating to Representation" Must Raise a Potential Question About Employees' Choice of Labor Organization Representation. ...................................2

    B.    The FLRA Views Exclusions Under § 7103(b) as a Bar to Its Jurisdiction. ...............................................6

II.    One Type of Petition for Clarification Does Not Involve An "Appropriate Unit" Determination. ...............................7

III.    Although Administrative Review of § 7111 Petitions Contains No Dead Ends, Courts Have Only Greenlit Judicial Review of FLRA Orders Dismissing § 7111 Petitions on Threshold Grounds. ..........8

IV.    *AFGE v. Loy* Does Not State the Proper Test for the Preclusive Effect of an Administrative Review Scheme. ...............10

CONCLUSION .......................................................................13

# TABLE OF AUTHORITIES

**Cases**

*AFGE Local 987*, 66 F.L.R.A. 589 (2012)................................................13

*AFGE v. Loy*, 367 F.3d 932 (D.C. Cir. 2004)................................. 1, 10, 13

*AFGE v. Nicholson*, 475 F.3d 341 (D.C. Cir. 2007) ..................................7

*AFGE, Local 3966*, 57 F.L.R.A. 750 (2002)............................................13

*Axon Enters., Inc. v. FTC*, 598 U.S. 175 (2023) ............................1, 10-13

*Dep't of the Army*, 56 F.L.R.A. 126 (2000) ..................................................5

*Dep't of the Interior*, 53 F.L.R.A. 1417 (1998)............................................4

*Dep't of the Navy*, 6 F.L.R.A. 498 (1981) ....................................................6

*Eisinger v. FLRA*, 218 F.3d 1097 (9th Cir. 2000) ................................9, 10

*Export-Import Bank of the U.S.*, 71 F.L.R.A. 957 (2020)...........................2

*Overseas Private Inv. Corp.*, 36 F.L.R.A. 480 (1990) ...........................5, 8

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ...........................12

*U.S. Dep't of the Treasury*, 3 F.L.R.A. 31 (1980)......................................6

**Statutes**

5 U.S.C. § 7103(b)........................................................................................6

5 U.S.C. § 7103(b)(1)...............................................................................1, 12

5 U.S.C. § 7105(f).........................................................................................9

5 U.S.C. § 7111 ...........................................................................1, 8, 9, 10

5 U.S.C. § 7111(b)(2)...............................................................1, 2, 3, 5, 6

5 U.S.C. § 7111(d) ............................................................... 3

5 U.S.C. § 7112 ................................................................... 9

5 U.S.C. § 7118(a)(1) ........................................................... 9

5 U.S.C. § 7123 ............................................................. 9, 10

**Regulations**

5 C.F.R. § 2422.31 ............................................................... 9

**Other Authorities**

FLRA, Representation Proceedings Case Handling Manual at 3.3.2,
https://www.flra.gov/system/files/webfm/OGC/Manuals/REP%20Proce
edings%20CHM.pdf .................................................... 4, 7, 8

# <u>GLOSSARY</u>

| | |
|---|---|
| FLRA | Federal Labor Relations Authority |
| NTEU | National Treasury Employees Union |
| Statute | Federal Service Labor-Management Relations Statute |

## SUMMARY OF ARGUMENT

As explained below, 5 U.S.C. § 7111 does not present a path to judicial review of NTEU's ultra vires claim. And the standard in *AFGE v. Loy*, 367 F.3d 932 (D.C. Cir. 2004), for determining the preclusive effect of an administrative review scheme conflicts with the approach prescribed in *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023).

## ARGUMENT

**I. NTEU Cannot Present Its Ultra Vires Claim to the FLRA by Filing a Petition Under § 7111(b)(2), Nor Would the FLRA Have Authority to Resolve That Claim.**

The Court's first question is,

> Whether the plaintiffs can present any of their claims in these cases to the FLRA . . . by filing petitions "seeking clarification of . . . a matter relating to representation" under 5 U.S.C. § 7111(b)(2) . . . and whether the FLRA . . . ha[s] authority to resolve those claims.

The answer, on both counts, is no. NTEU cannot present its ultra vires claim to the FLRA through a petition "seeking clarification of . . . a matter relating to representation" under § 7111(b)(2) because that claim is not a "matter relating to representation" within the meaning of that provision. Indeed, the FLRA views exclusions under § 7103(b)(1) as a jurisdictional bar to deciding a petition's merits. Exclusions under § 7103(b)(1) thus lie outside the FLRA's authority to examine.

1

## A. A "Matter Relating to Representation" Must Raise a Potential Question About Employees' Choice of Labor Organization Representation.

The term "matter relating to representation" under § 7111(b)(2) is not an open-ended catchall. The text of § 7111(b)(2) and the FLRA's interpretation of it show that "a matter relating to representation" must raise a potential question about employees' choice about which labor organization, if any, they wish to represent them.

1. A starting point for deducing the meaning of "matter relating to representation" is § 7111(b)(2)'s use of the similar term "question of representation." "By its plain terms, § 7111(b)(2) of [the] Statute . . . specifically requires an election when a clarification petition involves a question of representation." *Export-Import Bank of the U.S.*, 71 F.L.R.A. 957, 959 (2020). The provision states that if a petition is filed "seeking clarification of . . . a matter relating to representation," then "the Authority shall investigate the petition, and if it has reasonable cause to believe that a question of representation exists . . . the Authority shall supervise or conduct an election on th[at] question." 5 U.S.C. § 7111(b)(2). Because § 7111(b)(2) requires an election to

resolve a "question of representation," such questions include only those that an election can resolve.

Under § 7111(d), an election is a secret-ballot vote among eligible employees to choose which labor organization they wish to have represent them or not to be represented by any labor organization. Thus, because a "question of representation" is necessarily one that an election can resolve, it must be about whether the existing state of affairs reflects the employees' choice about which labor organization, if any, they wish to represent them.

**2.** The meaning of "question of representation," then, bears on the meaning of "matter relating to representation." According to the text of § 7111(b)(2), the FLRA must investigate a petition on a "matter relating to representation" to determine if a "question of representation" that warrants an election exists. So, a "matter relating to representation" must raise a potential question about whether the current situation meets employees' wishes about representation. But it will not always warrant an election.

The FLRA's examples of "matters relating to representation" in its own manual are instructive. Those examples are,

a. questions relating to the continued appropriateness of an existing unit(s) due to a substantial change in the character and scope of the unit(s), (i.e. changes in operations due to a reorganization, realignment or merger); or

b. questions relating to the majority status of the currently recognized or certified labor organization.

FLRA, Representation Proceedings Case Handling Manual at 3.3.2, https://www.flra.gov/system/files/webfm/OGC/Manuals/REP%20Proceedings%20CHM.pdf (FLRA Manual).

When an agency reorganizes or consolidates its employees, as in the first example, a question might arise about which labor organization, if any, the newly constituted mix of employees wishes to represent them. But the FLRA has held that an election is not always warranted. In cases involving groups of represented and unrepresented employees, "there is no need for an election where a majority of the employees are represented, since the election requirement was already satisfied when the exclusive representative was certified." *Dep't of the Interior*, 53 F.L.R.A. 1417, 1422 (1998). Or if more than one union's employees are involved, "a union that represents more than 70 percent of the employees in a newly combined unit . . . is sufficiently predominant to render an election unnecessary because such an election

would be a useless exercise." *Dep't of the Army*, 56 F.L.R.A. 126, 131 (2000).

The FLRA's second example describes a petition that an agency can file raising a good-faith doubt that a union continues to represent a majority of employees in an existing unit. *See Overseas Private Inv. Corp.*, 36 F.L.R.A. 480, 483–84 (1990) (*OPIC*). This kind of petition may or may not warrant an election, depending on whether the evidence supports the agency's good-faith doubt. *See id.* at 487.

**3.** NTEU's claim that the Executive Order is ultra vires does not involve a potential question about employees' wishes about which labor organization, if any, they wish to represent them. There is no dispute that employees in the defendant agencies want NTEU to represent them: elections have confirmed it. The only dispute is about whether the President exceeded his authority when he excluded those agencies from the Statute, an issue that an election would not resolve. Thus, NTEU cannot bring its ultra vires claim to the FLRA in a petition "seeking clarification of . . . a matter relating to representation" under § 7111(b)(2).

**B.  The FLRA Views Exclusions Under § 7103(b) as a Bar to Its Jurisdiction.**

1.    The FLRA has held that "[w]here the President has specifically excluded an agency or activity from coverage under the Statute by issuing an executive order, the Authority is clearly without jurisdiction to process a representation petition." *Dep't of the Navy*, 6 F.L.R.A. 498, 500 (1981). The FLRA has summarily dismissed such petitions. *Id.*; *see U.S. Dep't of the Treasury*, 3 F.L.R.A. 31, 32 (1980).

Along with the other interpretive clues, these dismissals further show that the validity of an exclusion under § 7103(b) cannot constitute a "matter relating to representation." Resolving a "matter relating to representation" would be resolving the merits of the petition. But an exclusion under § 7103(b) bars the FLRA at the threshold from reaching the merits.

In addition, the dismissals in *Navy* and *Treasury* show that the FLRA lacks authority to resolve NTEU's ultra vires claim in a § 7111(b)(2) petition. The FLRA "is clearly without jurisdiction" to even process a petition involving an excluded agency, let alone examine the validity of the exclusion. *Dep't of the Navy*, 6 F.L.R.A. at 500.

**2.** So, as NTEU has argued all along, the Executive Order has placed NTEU's claims against the excluded agencies outside of the statutory scheme. *See* NTEU Br. at 17–24. As in *AFGE v. Nicholson*, NTEU is "presumptively entitled to judicial review of its claim" because the claim is "expressly outside the FLRA's purview." 475 F.3d 341, 348 (D.C. Cir. 2007).

## II. One Type of Petition for Clarification Does Not Involve An "Appropriate Unit" Determination.

The Court's second question is,

> Whether petitions for clarification are limited to issues of "appropriate unit determination" and, if not, what other issues may be adjudicated by way of such petitions.

Because, as addressed above, NTEU cannot bring its ultra vires claim in a petition "seeking clarification of . . . a matter relating to representation," this question has no application here. NTEU nevertheless answers it below.

One type of petition for clarification—one of the FLRA's two examples of a petition "seeking clarification . . . of a matter relating to representation"—does not involve an "appropriate unit" determination: a petition raising a good-faith doubt that a union continues to represent a majority of employees in an existing unit. *See* FLRA Manual 3.3.2;

*OPIC*, 36 F.L.R.A. at 480–81. In these cases, the question is not about the appropriateness of a unit, but about whether employees in an existing, already-deemed-appropriate unit still want to be represented by the union certified for that unit. *Id.*

NTEU knows of no other type of clarification petition that does not involve an "appropriate unit" determination. The FLRA's other example of a petition "seeking clarification of . . . a matter relating to representation" clearly does, as evident from the FLRA's brief description: a petition raising "questions relating to the continued appropriateness of an existing unit(s) due to a substantial change in the character and scope of the unit(s)." FLRA Manual 3.3.2.

## III. Although Administrative Review of § 7111 Petitions Contains No Dead Ends, Courts Have Only Greenlit Judicial Review of FLRA Orders Dismissing § 7111 Petitions on Threshold Grounds.

The Court's third question is,

Whether resolutions of petitions for clarification filed with the FLRA . . . are necessarily subject to further administrative or judicial review.

NTEU responds to this question, even though NTEU cannot bring its claim in a petition for clarification.

Unlike an unfair labor practice charge, which might hit a dead end if the General Counsel does not issue a complaint, a petition for clarification is always eligible for action by the FLRA. *Compare* 5 U.S.C. § 7118(a)(1), *with* 5 U.S.C. § 7105(f), *and* 5 C.F.R. § 2422.31. Although petitions are filed with a Regional Director, the Regional Director's decision either becomes the action of the FLRA or is reviewed by the FLRA, which then issues its own action. 5 U.S.C. § 7105(f); 5 C.F.R. § 2422.31.

Once the FLRA's action issues, however, judicial review is usually unavailable. Indeed, most petitions under § 7111 involve "appropriate unit" determinations under § 7112, which are exempted from judicial review under § 7123.

The D.C. Circuit and the Ninth Circuit have suggested that judicial review is available for FLRA orders on § 7111 petitions that do not involve "appropriate unit" determinations under § 7112. *See Loy*, 367 F.3d at 935; *Eisinger*, 218 F.3d at 1102. But the petitions in both cases would have involved "appropriate unit" determinations if the FLRA had not dismissed them on threshold grounds. In *Loy*, the FLRA "never reached the unit question" because it dismissed the petitions for

lack of jurisdiction. 367 F.3d at 936. Similarly, in *Eisinger*, an employee filed a unit clarification petition, but the FLRA held that the employee lacked standing to bring the petition and dismissed it. 218 F.3d at 1099–102.

So, no court has held that the merits of a § 7111 petition is reviewable by a court of appeals under § 7123. Although the merits of a § 7111 petition raising questions about a union's majority status in an existing unit would not involve an "appropriate unit" determination, no court has reviewed such a case.

## IV.  *AFGE v. Loy* **Does Not State the Proper Test for the Preclusive Effect of an Administrative Review Scheme.**

The Court's fourth question is,

Whether *Loy* properly states the test for determining the preclusive effect of an administrative review scheme.

**A.**     *Loy*'s edict that if a claim is "'arguably' within the FLRA's authority to decide," it *must* be channeled through that scheme (367 F.3d at 935–36) conflicts with *Axon. Axon* cautions against such a narrow focus and compels a broader view. "Recall our task: to decide if a claim is 'of the type' Congress thought belonged within a statutory scheme." 598 U.S. at 188–89; *see id.* at 186 (reminding that "a statutory

10

review scheme of that kind does not necessarily extend to *every* claim concerning agency action") (emphasis added).

In evaluating this question, *Axon* instructs courts to take a "30,000-foot view of the issue" raised in the claim. *Id.* at 188–89. From that vantage point, the question is whether the plaintiff is challenging "any specific substantive [agency] decision—say, to fining a company (*Thunder Basin*) or firing an employee (*Elgin*)" or "the commonplace procedures agencies use to make such a decision." *Id.* at 189. If so, channeling is likely warranted. *See id.* But where the plaintiff challenges whether the executive branch is unlawfully wielding its authority "in all or a broad swath of its work," Congress is unlikely to have intended federal district courts to be divested of their subject matter jurisdiction. *See id.*

NTEU's ultra vires claim falls squarely in the latter camp. "Recall our task: to decide if a claim" challenging *an Executive Order's nullification of three-quarters of the Statute's coverage* "is 'of the type' Congress thought belonged within a statutory scheme." *See id.* at 188–89. Congress could not have intended for such a challenge—brought against federal agencies that the parties *agree* now fall outside of the

Statute's review scheme—to be channeled through that scheme. And *Axon*'s gloss on the *Thunder Basin* factors confirms it.

The first *Thunder Basin* factor, *Axon* says, focuses on the practical question of whether judicial review would "come too late to be meaningful." *Id.* at 191. In *Thunder Basin* itself, all agreed that the plaintiff, a mining company, could function while awaiting eventual judicial review of a single fine. *See* 510 U.S. 200, 216–18 (1994). In contrast, here, NTEU cannot perform—at all—its primary mission of bargaining collectively for two-thirds of its workers. That will lead to lasting damage that cannot be undone. *See* NTEU Br. at 55–61.

*Axon* explains that the second and third *Thunder Basin* factors— whether the claim is "wholly collateral to [the] statute's review provisions" and "outside the agency's expertise"—"reflect in related ways the point of special review provisions," i.e., "to give the agency a heightened role in the matters it customarily handles, and can apply distinctive knowledge to." 598 U.S. at 186. The FLRA does not "customarily handle[]" claims challenging § 7103(b)(1) exemptions; indeed, it has never assessed such a claim. It is thus unable to apply "distinctive knowledge" to whether the Executive Order is ultra vires.

*See id.* at 194 (channeling not required where agency knew "nothing special" about issue presented). So, these *Thunder Basin* factors likewise counsel against preclusion.

**B.** Even applying *Loy*'s incorrect, narrow focus on whether the FLRA "arguably" has jurisdiction, the FLRA here clearly does not. Its unbroken line of precedent flatly holds that it lacks jurisdiction over claims against agencies or subdivisions exempted from the Statute. *AFGE, Local 987*, 66 F.L.R.A. 589, 598 (2012); *AFGE, Local 3966*, 57 F.L.R.A. 750 (2002). In contrast, in *Loy*, the FLRA definitely (not just arguably) "had the exclusive authority to render judgment on the question" presented. 367 F.3d at 936. In the absence of even "arguable" FLRA jurisdiction over NTEU's claim, *Loy* does not preclude federal district court jurisdiction.

## CONCLUSION

The district court should be affirmed.

Respectfully submitted,

*/s/  Paras N. Shah*
PARAS N. SHAH
General Counsel

*/s/  Allison C. Giles*
ALLISON C. GILES
Associate General Counsel

*/s/  Jessica Horne*
JESSICA HORNE
Assistant Counsel

NATIONAL TREASURY
EMPLOYEES UNION
800 K Street N.W., Suite 1000
Washington, D.C.  20001
(202) 572-5500
paras.shah@nteu.org
allie.giles@nteu.org
jessica.horne@nteu.org

January 5, 2026                          Counsel for Appellee NTEU

## CERTIFICATE OF COMPLIANCE

I hereby certify this response complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font, and that it complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(b) because it contains 2,499 words, excluding those words that Federal Rule of Appellate Procedure 32(f) exempts.

<div style="margin-left:40%">

/s/  Jessica Horne
JESSICA HORNE
Counsel for Plaintiff-Appellee
National Treasury Employees Union

</div>