

**U.S. Department of Justice**

Civil Division, Appellate Staff
950 Pennsylvania Ave. NW, Rm. 7212
Washington, DC 20530

Tel: (202) 514-4820

February 19, 2026

VIA CM/ECF

Mr. Clifton Cislak
Clerk of the Court
U.S. Court of Appeals for the
   District of Columbia Circuit
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue N.W.
Washington, DC 20001

      Re:   *National Treasury Employees Union (NTEU) v. Trump*, No. 25-5157
            (D.C. Cir.) (argument heard December 15, 2025)

Dear Mr. Cislak:

     Defendants submit this letter in response to plaintiff's letter of February 13, 2026, notifying the Court of a memorandum issued by the Office of Personnel Management (OPM) providing guidance to agencies regarding the implementation of the executive order challenged in this case. On February 17, 2026, OPM revised the memorandum to clarify that the "guidance does not apply to bargaining units where there is a currently-applicable court order preventing implementation of the executive orders with respect to those units." Add. 1.

     NTEU errs in arguing that the guidance "validates" its position that it cannot challenge the executive order through the FSLMRS's review scheme. The OPM guidance proceeds on the premise, consistent with the government's position in this litigation, that the executive order is lawful, and that therefore the provisions of the FSLMRS no longer apply to the agencies and subdivisions named in that order. But the guidance does not suggest that the executive order has eliminated the channels by which a union could challenge the order's validity before the FLRA. To the contrary, the OPM guidance advises agencies to effectuate the

executive order by "fil[ing] decertification petitions or unit clarification petitions regarding covered agencies and subdivisions with the [FLRA]." Add. 3. OPM thus intends agencies to effectuate the executive order through the FLRA's processes. A union could contest a decertification petition or unit-clarification petition, which is filed under 5 U.S.C. § 7111(b), by arguing that the executive order is invalid. The FLRA's decision on that petition could address the union's challenge and would be subject to judicial review. *See* 5 U.S.C. § 7123. The OPM guidance thus confirms that unions can obtain judicial review of their claims through the statutory scheme.

NTEU also errs in contending that the OPM guidance makes a preliminary injunction necessary to prevent irreparable harm to the union. As the government has previously explained, any harm to NTEU can be remedied if it ultimately prevails on the merits through the reinstatement of its collective-bargaining agreement. *See* Opening Br. 56-57. Such reinstatement can also provide retroactive relief. *See id.*

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

MELISSA N. PATTERSON
WEILI J. SHAW

 /s/ Joshua M. Koppel
JOSHUA M. KOPPEL
BENJAMIN T. TAKEMOTO
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7212*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4820*
  joshua.m.koppel@usdoj.gov

cc:    All parties (via CM/ECF)



UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

The Director

# MEMORANDUM

| | |
|---|---|
| **TO:** | Heads of Departments and Agencies |
| **FROM:** | Scott Kupor, Director, U.S. Office of Personnel Management |
| **DATE**: | February 12, 2026<br>Revised: February 17, 2026 |
| **RE**: | Implementation of Executive Orders 14251 and 14343 |

Last year, President Trump signed Executive Order 14251, *Exclusions from Federal Labor-Management Relations Programs* (E.O. 14251)*,* and Executive Order 14343, *Further Exclusions From the Federal Labor-Management Relations Program* (E.O. 14343), determining that several agencies and agency subdivisions have as a primary function intelligence, counterintelligence, investigative or national security work, and that the provisions of the Federal Service Labor-Management Relations Statute (FSLMRS) cannot be applied to these agencies and agency components consistent with national security considerations. In both E.O. 14251 and E.O. 14343, the President acted consistent with his Commander-in-Chief responsibilities and his authority under 5 U.S.C. § 7103(b) by prioritizing national security mission delivery, managerial effectiveness, and employee accountability to protect the American people.

For various reasons, including litigation, implementation of these Executive Orders at certain agencies and agency subdivisions has been delayed. The U.S. Office of Personnel Management (OPM) now advises agencies and agency subdivisions covered by E.O. 14251 and E.O. 14343 that they should proceed to terminate or modify CBAs in order to fully comply with those Executive Orders, as set forth below:

- Covered agencies and agency subdivisions should notify any labor unions and bargaining unit employees impacted by E.O. 14251 or E.O. 14343 that they are terminating any applicable CBAs, whether represented by the National Treasury Employees Union (NTEU) or another labor union. OPM is attaching a *template termination notice* agencies may modify as required to provide notice.

Add. 1

- Agencies must continue to adhere to CBAs with bargaining unit employees and labor unions not excluded from collective bargaining as described in 1-499 of Section 2 of E.O. 14251. Employees excepted from coverage under E.O. 14251 and E.O. 14343 will continue to be represented by their labor unions and subject to the terms of their applicable CBAs.

- Agencies and subdivisions identified in E.O. 14251 or E.O. 14343 must report the status of all CBAs for every bargaining unit using the attached spreadsheet to OPM by the first of each month (e.g., March 1, April 1, etc.) until all termination notices are executed and reported. Agencies' headquarters should only submit one report covering all subordinate components and bargaining units. Agency submissions should be emailed to awr@opm.gov.

- This guidance does not apply to bargaining units where there is a currently-applicable court order preventing implementation of the executive orders with respect to those units.

OPM has updated its Frequently Asked Questions regarding E.O. 14251 and E.O. 14343 to reflect the information contained in this Memorandum.

Agency labor relations staff should work with agency legal counsel to provide termination notices to the appropriate unions. For additional information, agency headquarters-level human resources offices may contact OPM at awr@opm.gov. Component-level human resources offices must contact their agency headquarters for assistance.

cc: Chief Human Capital Officers (CHCOs), Deputy CHCOs, Human Resources Directors, Chiefs of Staff

Attachments:

- Frequently Asked Questions: Executive Order 14251: "Exclusions from Federal Labor-Management Relations Programs," Updated February 12, 2026

- Template: Termination of Collective Bargaining Agreements for Agencies subject to Executive Orders 14251 and 14343

- CBA Termination Reporting Spreadsheet

Frequently Asked Questions

Executive Order 14251:
"Exclusions from Federal Labor-Management Relations Programs"

and

Executive Order 14343:
"Further Exclusions From the Federal Labor-Management Relations Program"

**Updated February 12, 2026. Substantive updates to any FAQs are marked with an asterisk (\*).**

**\*Q1:** What do agencies need to do to terminate applicable CBAs?

**\*A1:** Agencies should, as soon as possible, terminate or modify all CBAs with labor unions for bargaining units impacted by Executive Order 14251, "Exclusions From Labor-Management Relations Programs" (E.O. 14251) or Executive Order 14343, "Further Exclusions from the Federal Labor-Management Relations Program" (E.O. 14343).

Agencies, however, must continue to adhere to CBAs with labor unions not impacted by either E.O. 14251 and E.O. 14343. Bargaining unit employees not impacted by E.O. 14251 and E.O. 14343 will continue to be represented by their labor unions and subject to the terms of their applicable CBAs. Agencies should consult with their General Counsels to assess next steps regarding those CBAs.

**\*Q2:** Should agencies decertify bargaining units or file unit clarification petitions of covered agencies or subdivisions?

**\*A2:** Agencies should, as soon as practicable, and in coordination with the General Counsels, file decertification petitions or unit clarification petitions regarding covered agencies and subdivisions with the U.S. Federal Labor Relations Authority (FLRA).

**\*Q3:** Should agencies amend current filings for exceptions to arbitration awards where an arbitrator ordered relief for a bargaining unit covered under E.O. 14251?

**\*A3:** Yes. Agencies should amend current filings for exceptions to arbitration award to take the position that the union lacks standing as it is not recognized as a result of E.O. 14251.

**\*Q4:** In any ongoing proceedings in which an agency is asked to submit a statement of position regarding an unfair labor practice charge under investigation by the FLRA, should agencies submit a statement?

**\*A4:** Yes. The statement should assert, and agencies should identify for the appropriate FLRA regional office, the Administration's position that the relevant agency or agency subdivision is no longer subject to provisions of the Federal Service Labor-Management Relations Statute (FSLMRS) per E.O. 14251.

**\*Q5:** Should agencies and agency subdivisions covered by E.O. 14251 continue to participate in alternative dispute resolution activities with labor unions representing police officers, security

guards, and firefighters? What about bargaining units comprised of other occupations?

**\*A5:** Agencies may continue collective bargaining activities, including alternative dispute resolution and other third-party proceedings with unions representing police officers, security guards, and firefighters, provided that these unions continue to be recognized consistent with E.O. 14251. However, for matters involving a dispute for any unit that represents positions now excluded under E.O. 12171, "Exclusions from the Federal Labor-Management Relations Program" (E.O. 12171) as amended, agencies should continue those dispute resolution activities only if they are doing so independently of any requirements of a CBA and not relying on any provisions of Chapter 71 to compel their participation.

**\*Q6:** Should agencies change the bargaining unit status codes on employees' SF-50s?

**\*A6:** Yes. Agencies should change their bargaining unit status code to '8888' for employees whose bargaining unit status has been affected by E.O. 14251 and E.O. 14343.

**Q7:** What is meant by the term "subdivision?"

**A7:** The term "subdivision" refers to any organization, office, or component that is subordinate to an agency or department head, as well as any division within those organizations, offices, or components.

**Q8:** What is meant by Section 2 of E.O. 14251 where it states: "the immediate, local employing offices of any agency police officers, security guards, or firefighters…"

**A8:** This means an agency or subdivision that directly supervises and employs such employees at the local level. This category will generally include purely the law enforcement officers in question. Please contact OPM if you have any questions as to whether specific employees are covered by the exclusion.

**Q9**: What actions should agencies take regarding bargaining units that represent both (i) employees in positions *not* subject to exclusion (e.g., police officers, security guards, firefighters) and (ii) agency employees now *excluded* under the President's new directive?

**A9:** Agencies should preserve the rights of employees not excluded from collective bargaining including by continuing to participate in third-party procedures (e.g., arbitrations) that are focused solely on conditions of employment, contractual and statutory obligations, or other matters limited to these employees. For employees no longer included in a bargaining unit, agencies should follow the direction provided in this guidance. If agencies need further guidance, please contact OPM at awr@opm.gov.

**Q10:** If an employee is no longer permitted to join or form a labor organization under the FSLMRS, may he or she strike against the Government while serving as a federal employee?

**A10:** Under 5 U.S.C. § 7311, employee strikes against the Government of the United States are prohibited for all Federal employees, irrespective of whether they are in a bargaining unit.

**Q11:** Can grievances initially filed under a negotiated grievance process (5 U.S.C. 7121) be transitioned to an administrative grievance process?

**A11:** Yes. Agencies may transfer a grievance initially filed under a negotiated grievance procedure to its internal administrative grievance procedure provided the matter is not excluded by the agency's administrative grievance procedure and the grievant timely requests to transition to the administrative grievance procedure.

**Q12:** Are unions ineligible as employee representatives under the FSLMRS permitted to establish consultative relationships with agencies pursuant to 5 C.F.R. Part 251?

**A12:** OPM's regulations "[provide] a framework for consulting and communicating with **non-labor organizations** representing Federal employees and with other organizations on matters related to agency operations and personnel management." *See* 5 C.F.R. Part 251 (emphasis added). A union is a "labor organization," as defined in 5 U.S.C. 7103(a)(4), and is therefore, not covered by 5 C.F.R. Part 251 whether they represent bargaining unit employees at an agency or not.

**Q13:** With announcement of the E.O. 14251 and E.O. 14343 are covered agencies still required to submit data to OPM regarding taxpayer-funded union time (TFUT), collective bargaining costs, and other labor relations data points?

**A13:** Yes. Please continue to collect and timely submit agency labor relations data as requested, even if the agency or subdivision therein is now exempted from the provisions of the FSLMRS.

**\*Q14:** What should agencies do with agreements that are pending Agency Head Review (AHR) and cover newly excluded agencies, subdivisions, or partial groups?

**\*A14:** For agreements that include positions not subject to exclusion from collective bargaining (e.g., police officers, security guards, firefighters), agencies should conduct AHR as they normally would. For agreements that include a mix of excluded and included units, agencies should continue AHR and include a note that the agreement only covers those not excluded by E.O. 14251 and that the agreement has no applicability to other employees.

For all other bargaining units, agencies need not continue reviewing such agreements as they are no longer bound by the FSLMRS. However, agencies may, out of an abundance of caution, exercise their agency head authority to disapprove any agreements pending AHR.

**\*Q15:** For agencies that are currently bargaining with unions, are there any concerns with solidifying and executing agreements such as tentative agreements or memoranda of understandings or agreements (MOUs or MOAs)?

**\*A15:** Agencies should withdraw from negotiations with those labor unions who represent bargaining units impacted by E.O. 14251 and E.O. 14343. Where a labor union represents bargaining unit employees excepted from E.O. 14251 and E.O. 14343, agencies should continue negotiating with these bargaining units limited to only those matters subject to collective bargaining for employees excepted or not impacted by E.O. 14251 and E.O. 14343.

**Q16:** In Section 2 of E.O. 14251, 1-419 states: "The following agencies or subdivisions of each Executive department listed in section 101 of title 5, United States Code, the Social Security Administration, and the Office of Personnel Management: (a) Office of the Chief Information Officer (OCIO). (b) any other agency or subdivision that has information resources management duties as the agency or subdivision's primary duty." Does this apply to all OCIO offices within an agency not listed in E.O. 14251?

**A16:** This provision applies only to CIO offices in the Executive Departments (*see* 5 U.S.C. 101), OPM, and the Social Security Administration, as well as the subordinate agencies and offices under those Departments/agencies.

**Q17**: What does information resources management mean as used in Section 2 of E.O. 14251?

**A17**: The Paperwork Reduction Act defines "information resources management" at 44 U.S.C. § 3502(7), as "the process of managing information resources to accomplish agency missions and to improve agency performance, including through the reduction of information collection burdens on the public."

## April 22, 2025 Additional Questions and Answers

**\*Q18:** How should agencies handle union time and office space provided to union representatives who are no longer in a recognized unit?

**\*A18:** Agencies and subdivisions covered by E.O. 14251 and E.O. 14343 must reclaim any agency space, furniture, equipment (e.g., computers, phones), and other resources previously utilized by labor unions for representational activities and repurpose those resources for agency business only. Employees of covered agencies and subdivisions who were previously authorized to use taxpayer-funded union time are no longer permitted use of such time and should only be conducting agency-assigned work during their scheduled duty time. Supervisors should not approve any time and attendance records that include requests for and use of taxpayer-funded union time. For agencies and subdivisions not subject to exclusion from collective bargaining, agencies can allow for use of union time and office space as they normally would.

**\*Q19:** What if an arbitration is already scheduled for an agency or subdivision now excluded under E.O. 14251 and E.O. 14343?

**\*A19:** Agencies should withdraw from the proceeding and pay arbitrators for any work already performed.

**\*Q20:** How does E.O. 14251 and E.O. 14343 impact unions' consultation rights under the FSLMRS?

**\*A20:** The FSLMRS grants labor unions consultation rights under 5 U.S.C. §§ 7113 and 7117(d) on substantive changes to conditions of employment at the national, subnational, and government-wide basis, respectively. Agencies should assess and determine whether labor unions meet the requirements under 5 C.F.R. Part 2426 and take appropriate action with the appropriate FLRA Regional Office where it believes labor unions no longer meet the eligibility criteria for consultation rights. Agencies should begin to assess the impact of E.O. 14251 and E.O. 14343 on unions holding governmentwide or national consultation rights. Before taking action, agencies should consult their General Counsel and coordinate with the Department of Justice.

**Q21:** Section 7 of E.O. 14251 requires all agency heads with employees covered by Chapter 71, to identify any agency subdivisions with a primary function of intelligence, counterintelligence, investigative, or national security work, that are not covered by Executive Order 12171, as amended. Does this only apply to agencies defined in 5 U.S.C. 101?

**A21:** Section 7 is not limited to those agencies defined under 5 U.S.C. 101 or those listed in E.O. 14251. Rather, every agency head should review their respective missions and identify any subdivisions with a primary function of intelligence, counterintelligence, investigative, or national

security work.

**Q22:** Some employees no longer have union dues or other fees deducted from their government paychecks for union-provided benefits/insurance (e.g., dental, vision, etc.). Is this cessation of payroll deductions considered a life-changing event that would allow employees to opt into federal benefits coverage?

**A22:** Employees should consult with the union or insurance provider from whom they were receiving benefits (i.e., non-FEDVIP plans) regarding coverage questions. If confirmed to have lost coverage, this would be considered a Qualifying Life Event that allows enrollment in a FEDVIP plan outside of Open Season. The individual has from 31 days before to 60 days after the event to enroll. More information is available here: [Dental and Vision | BENEFEDS](#).

**Q23:** May agencies communicate with unions representing employees who are still recognized under E.O. 14251 and E.O. 14343 (e.g., police officers, security guards, firefighters) or otherwise still recognized under 5 U.S.C. 71?

**A23:** Yes. Unions who have bargaining unit employees that are not excluded under the Executive Order, maintain recognition under Chapter 71 of Title 5, U.S. Code. Therefore, normal labor-management communication and engagement should continue.

**\*Q24:** How should an agency handle an impending change in conditions of employment for employees now excluded by E.O. 14251 and E.O. 14343? How should an agency respond to a union inquiry regarding this change in conditions of employment?

**\*A24:** An agency or subdivision covered by E.O. 14251 and E.O. 14343 can implement the change without providing advance notice or completing negotiations, provided that it continue to engage in collective bargaining with any labor union not impacted by either order.

**\*Q25:** What should an agency do if it receives a grievance from the union for an individual or unit that is no longer recognized in accordance with E.O. 14251 and E.O. 14343?

**\*A25:** For units represented by any other labor union, the agency should disregard the grievance and inform the individual employee that he or she may proceed to file an administrative grievance, if applicable. For grievances that include positions not subject to exclusion from collective bargaining (e.g., police officers, security guards, firefighters), agencies should conduct their negotiated grievance procedures as they normally would.

**\*Q26:** Should an agency continue to allow union representation in Weingarten meetings and formal discussions with employees excluded under E.O. 14251 and E.O. 14343?

**\*A26:** No. Agencies should only invite unions to formal discussions and honor requests for Weingarten meeting representation for employees <u>not</u> excluded from collective bargaining under E.O. 14251 and E.O. 14343.

**\*Q27:** If a CBA is set to rollover for units no longer recognized, but the agreement has also not been terminated, what do we do?

**\*A27:** For all collective bargaining agreements between an agency and labor union no longer recognized as a result of E.O. 14251 and E.O. 14343, agencies should formally terminate the CBA by notifying the labor union. No other action is required. Agencies should be careful, however, to

ensure that they do not terminate a CBA where the labor union and bargaining employees are excepted under 1-499 of Section 2 of E.O. 14251.

**\*Q28:** If an agency notified a union prior to E.O. 14251 and E.O. 14343 that it was terminating a labor-management forum and the union requests to negotiate, how should the agency respond?

**\*A28:** On March 27, 2025, OPM issued guidance requiring agencies to abolish labor-management forums, committees, and councils at the agency-wide and organizational levels. Many of these forums were established under Executive Order 14119, which was rescinded under Executive Order 14236 in March 2025. The guidance also noted that where the establishment or use of labor-management forums, committees, and councils are incorporated into the terms of any CBA, agencies should seek to renegotiate those terms at the earliest practicable juncture consistent with the policies of this Administration. If a unit that is no longer recognized under E.O. 14251 and E.O. 14343 seeks to negotiate over the termination of a forum, the agency should deny the request to bargain since the unit is no longer recognized.

**Q29:** The agency has received unsolicited messages from unions requesting consideration under Section 4 of E.O. 14251, which requires the Departments of Defense and Veterans Affairs to submit any suspensions of E.O. 14251 application to the Federal Register within 15 days of the order. How should the agency respond?

**A29:** The agency should acknowledge receipt only and not make any statements regarding the substance of the communication.

**Q30:** Are all OCIOs or equivalents excluded from collective bargaining?

**A30:** Executive Order 14251 excludes the OCIO in "agencies or subdivisions of each Executive department listed in section 101 of title 5, United States Code," and in the Social Security Administration and OPM.

**\*Q31:** Should agencies respond to union Requests for Information (RFIs) from units that are now excluded in accordance with E.O. 14251?

**\*A31:** In response to such RFIs, agencies should notify the labor union that they are excluded from coverage under the FSLMRS under E.O. 14251 and, therefore, not entitled to information subject to the RFI.

**Q32:** How should agencies respond to questions regarding union dues?

**A32:** If an excluded employee asks about continuing union dues, the agency should inform the employee that union dues allotments through a government payroll provider are not authorized at this time and that if they wish to continue paying union dues nonetheless, they may contact the union directly.

**\*Q33:** How should agencies handle union dues allotments?

**\*A33:** In taking steps to implement E.O. 14251 and E.O. 14343, agencies should seek to end the collection of union dues allotments for those agencies or subdivisions identified in both executive orders. However, agency payroll providers should not unilaterally terminate all union dues allotments without first consulting with their customer agencies. Instead, agency payroll providers should contact their customer agencies to identify which labor unions and employees are excluded

from collective bargaining by E.O. 14251 and E.O. 14343 and limit the termination of dues allotments to those unions and employees.

Add. 9